UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY WAYNE ERVIN,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES DRENNAN, et al.,<br><br>    Defendants. | No. 2:19-cv-01883-KJM-CKD PS<br><br>FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 52) |

Presently before the court is defendants' motion to dismiss plaintiff's Second Amended Complaint ("SAC").[1] (ECF No. 52.) The motion was taken under submission pursuant to Local Rule 230(g) (ECF No. 57), and the court has considered defendants' memorandum in support of their motion, plaintiff's opposition, and defendants' reply. (ECF Nos. 52.1, 56, 58.) For the following reasons, the undersigned recommends GRANTING IN PART defendants' motion and dismissing plaintiff's claims against certain defendants with prejudice.

////

////

////

////

---

[1] Plaintiff is proceeding pro se, and this action is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21).

1

**BACKGROUND**

    **A.**    **Factual Background**[2]

For at least the last 22 years, plaintiff has suffered from psoriasis, a condition that results in skin irritation, which plaintiff claims causes him extreme burning pain when not medically controlled. (ECF No. 49 at 3, 8-9.) In September 2009, after trying many treatments and medicines that failed to control his symptoms, plaintiff's dermatologist at Kaiser Permanente prescribed him "the miracle medicine ENBREL"[3] for his psoriasis. (Id. at 3.) Plaintiff was started on two shots of Enbrel per week and later reduced to one shot per week, which he continued to self-administer until he was arrested in May 2018. (Id.)

This suit arises from plaintiff's claim that he was unconstitutionally deprived of this Enbrel medication for approximately 12 weeks, from his arrest and detention through July 2018 when he was restarted on Enbrel after filing a grievance. (Id. at 3-4, 27, 29.) The SAC asserts deliberate indifference claims for inadequate medical care, under 42 U.S.C. § 1983, against five physicians and a pharmacist who all work for the Sacramento County jails based on the following allegations. (Id. at 1-3.)

Plaintiff was arrested on May 8, 2018 and placed in pretrial detention at the Main Jail of Sacramento County. (Id. at 3.) During intake that day, a Sherriff's medical reviewer took down plaintiff's medical information, including his "'specialty' medicine," Enbrel; but Sherriff's personnel did not immediately obtain plaintiff's medical records from Kaiser. (Id.) The next day, May 9, 2018, plaintiff had a walk-in appointment for "warfarin dosing" with defendant Dr. James Drennan who arranged for plaintiff to receive warfarin and another previously prescribed medication but "avoided getting [him] set up with Enbrel." (Id. at 3, 12.) Dr. Drennan noted that plaintiff was taking Enbrel for psoriasis and had signed a release of his Kaiser medical and

---

[2] Unless otherwise indicated, these facts are drawn from the Second Amended Complaint and the documents attached thereto. (ECF No. 49.) As was true in resolving the prior motion to dismiss, the court disregards any additional allegations asserted only in plaintiff's opposition. (See ECF No. 48 at 7 (citing Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).)

[3] Although plaintiff capitalizes this medication throughout his pleadings, the court refers to the medication as "Enbrel" for easier readability.

pharmacy records, but the Kaiser release was still "pending for meds." (Id. at 3, 12 (Ex. 3).) Plaintiff alleges that Dr. Drennan "never made any arrangements for Plaintiff to get Enbrel" and "acted like he didn't want to help Plaintiff with the matter." This began a one-month period when plaintiff was "completely deprived of any psoriasis medicine." (Id.)

On May 15, 2018, plaintiff had an appointment with defendant Dr. Janet Abshire who, post-examination, noted that plaintiff had missed one Enbrel shot, causing a psoriasis "flare" with "small coin lesions" appearing on at least his wrist and right leg, and that the Kaiser records were still pending. (Id. at 14 (Ex. 4).) Dr. Abshire "suggested Plaintiff could be given medical release" but "showed no interest in prescribing Enbrel." (Id. at 4.) Plaintiff claims Dr. Abshire thereby "contributed to" the continuation of the one-month period in which plaintiff did not receive any psoriasis medication. (Id.)

Two days later, on May 17, 2018, plaintiff was transferred from the Main Jail to the Rio Cosumnes Correctional Center ("RCCC"), another county jail. (Id. at 4, 6, 15.) Plaintiff alleges that Drs. Abshire and Drennan "allowed [him] to be transferred" without getting his Enbrel medication. (Id. at 4.) Plaintiff further alleges that Dr. Abshire failed to place a "hold" to prevent his transfer despite suggesting that he might qualify for medical release. (Id.)

On May 24, 2018, plaintiff told a nurse that he needed to see a doctor to go over several medications he was not receiving. (Id. at 15 (Ex. 6).) Plaintiff alleges that this nurse "received a copy of Plaintiff's Enbrel prescription (and Enbrel Specifications) dated April 25th, 2018, and stated the prescription into the Plaintiff's medical record . . . ." (Id. at 4.) The nurse's note entered in plaintiff's medical record states in relevant part: "Pt has current RX Enbrel 50 mg/ml Pen 3.92mls sub Q, weekly that is current.states he is sta[r]ting to look like [a] cheetah." (Id. at 15.) Plaintiff also attaches to the SAC a copy of his April 25, 2018 Enbrel prescription label. The prescription (from plaintiff's Kaiser dermatologist) was for "ENBREL 50 MG/ML SURECK PEN-3.92MLS/BX," specifying 50 mg injections subcutaneously once a week. (Id. at 10 (Ex. 1).) According to plaintiff, the specifications dispensed with the medicine stated that

////

////

1  "Enbrel 50 mg/mL (0.98 mL) single dose prefilled SureClick autoinjector comes in a Carton of 4
2  doses under AMGEN & Immunex Corporation No. NDC 58406-445-04."[4]  (Id. at 6.)
3      The next chronological medical record attached to the SAC is an entry dated May 27,
4  2018 and electronically signed at 11:59 AM by defendant Dr. Grant Nugent, who was at the time
5  the Medical Director of Sacramento County Jails Correctional Health Services.  (Id. at 2, 20
6  (Ex. 9A).)  Dr. Nugent's "General Note" on the subject of "Essential Meds" was entered without
7  any personal examination of or communication with plaintiff, based purely on plaintiff's medical
8  file.  (Id. at 6.)  The entry reads, in relevant part:

> [Plaintiff] states he was on Humira until he had to change to Enbrel because of insurance.  He states that he is 3.92 mL of Enbrel—this would be 196 mg which is almost 4 times the FDA recommended dose for both plaque psoriasis and for psoriatic arthritis
> . . .
> Plan Humira 40 mg every two weeks

13  (Id. at 20 (capitalization altered to sentence case).)  The note also prescribes two other
14  medications and states "all meds and dosages [pending] receipt of information from Kaiser[.]"
15  (Id.)
16      Plaintiff alleges that Dr. Nugent "fabricated" the first two above-quoted sentences of the
17  entry (regarding plaintiff's purported statements), committing "libel-per-se" by insinuating that
18  that plaintiff "is a drug addict whose drug of choice is Enbrel and that [he] overdoses on 3.92
19  milliliters" all at once.  (Id. at 6.)  Plaintiff claims that Dr. Nugent used this discrepancy as an
20  excuse to terminate plaintiff's 9-year prescription for Enbrel, and that he recklessly prescribed
21  Humira instead, even though Humira has a "higher incidence of infections and malignancies" in
22  patients over 65 years old (plaintiff is 77 years of age).  (Id. at 7.)  Plaintiff alleges that Dr.
23  Nugent failed to use "common sense" by doubting the accuracy of plaintiff's prescribed dosage.
24  (Id.)  He further alleges that Dr. Nugent "backdated" this entry from some later time in order to

---

[4] A search of the FDA's National Drug Code ("NDC") Directory confirms that this NDC is assigned to Enbrel.  Among the other publicly available product information listed therein is a description of the package as containing 4 syringes in 1 carton, with 1 mL per syringe. See National Drug Code Directory, https://www.accessdata.fda.gov/scripts/cder/ndc/index.cfm (last accessed 12/29/2020).

4

"cover[] up" the denial of Enbrel, which was intended to pressure plaintiff to post bail and leave the jail. (Id. at 5.) He asserts that defendant Drs. Drennan and Abshire were also involved in this "joint participation." (Id.)

Related to these backdating and cover-up allegations, plaintiff describes a visit with another defendant, Dr. Robert Padilla, the next day, May 28, 2018. (Id. at 26.) During that visit, according to plaintiff, he and Dr. Padilla looked at the computerized medical record and found no entries by Dr. Nugent for the prior day. (Id. at 5.) Dr. Padilla's medical notes for that visit reflect that plaintiff had a history of "Psoriatic arthritis treated with Enbrel 50 mg a week Rx from Kaiser hospital"; that plaintiff "state[d] he is doing well and has no complaints"; and that plaintiff was worried his Enbrel was not getting ordered in time. (Id. at 16 (Ex. 7).) The notes also reflect a plan to "continue Enbrel." (Id.) Plaintiff returned to see Dr. Padilla two days later, on May 30, 2018. (Id. at 5.) According to plaintiff, Dr. Padilla "was angered" by Dr. Nugent's actions regarding Enbrel, and he and plaintiff discussed the possible need for plaintiff to file a grievance. (Id.)

The following week, on June 4, 2018, defendant Dr. Glayol Sahba entered a general note in plaintiff's medical record indicating that staff was checking on whether plaintiff received a dose of his "biologic med," presumably the Humira. (Id. at 26 (Ex. 14).) Plaintiff alleges, without explanation, that Dr. Sahba had joined the "joint participation" to backdate Dr. Nugent's medical records, and that this note shows there was "excitement and concern among some staff members to get the matter calmed down." (Id. at 8.) He further alleges that Dr. Sahba "acted as a fixer for [Dr.] Nugent to get bad circumstances calmed down." (Id.) And plaintiff also notes that although the "maintenance costs" of Enbrel and Humira are about the same, Dr. Sahba and the other "joint participants" never notified plaintiff so that he could "seek his rights earlier." (Id.)

Plaintiff alleges that the last defendant, pharmacist Steve Carter, also was "in joint participation with [Dr.] Nugent and others in unlawful activities against [plaintiff's] psoriasis health interests." (Id. at 7.) Plaintiff points to a June 5, 2018 prescription for adalimumab (brand name Humira) set to start on June 15, 2018 and stop on September 13, 2018, which was entered in plaintiff's medical record by defendant Carter. (Id. at 25 (Ex. 13).) Plaintiff asserts that this

5

prescription "was not lawfully signed for by a physician MD" and that Carter should have realized it unlawfully referred to Dr. Nugent's backdated information. (Id. at 7.)

On June 13, 2018, plaintiff filed an internal administrative grievance complaining of not receiving Enbrel for his psoriatic arthritis, and instead receiving Humira medication that was not effective. (Id. at 5, 29 (Ex. 17) (grievance reply).) Dr. Nugent received "referral and control" of the grievance, which he "caused to be rejected." (Id. at 5.)

On June 29, 2018, plaintiff returned to Dr. Padilla, who allegedly "encouraged [him] to get Enbrel by staying with [his] grievance." (Id. at 5.) Plaintiff claims that "Dr. Padilla was aware of local grievance assignment practices and expected Plaintiff would fail in the grievance and abandon any thoughts of appealing the grievance." (Id.) Plaintiff asserts that Dr. Padilla did not want to "stand at odds" with Dr. Nugent so did not report Dr. Nugent's "obnoxious behavior"; instead, he helped Dr. Nugent "cover up his unconstitutional behavior." (Id.)

On July 19, 2018, after plaintiff appealed his grievance, he was seen by a different doctor who restarted him on Enbrel. (Id. at 8.) The doctor's notes from this encounter state, in part:

> **Subjective:** Pt states that plaque psoriasis and psoriatic arthritis. [sic] Been on Enbrel (50/wk) for the past 5-6yrs on the outs. When came here was started on Humira once every 2wks. States this is not enough to control his [symptoms] and now is all flared up.
>
> Noted that MD note from 5/27/18 states his prior request appeared to be "4 times the recommended dose", that's why was started on Humira instead, pending records from Kaiser (still do not have access to these).

(Id. at 27 (Ex. 15).) In the "Objective" portion of the note, the doctor observed on plaintiff's legs scattered plaques, erythema (skin reddening), and at least one "reddened lesion with serious drainage." (Id.) The doctor discontinued plaintiff's Humira prescription, ordering him back onto Enbrel instead—twice a week for three months, and then weekly. The doctor also ordered doxycycline "for mild skin infections" and follow-up wound care to assist with debridement of one of the lesion plaques. (Id.)

Shortly thereafter, plaintiff received a reply to his grievance stating that his complaint had been addressed by the above change to his plan of care. The reply states in part:

////

6

> The documentation in your medical file indicates the physician discussed the current Humira order with you and the reason the Humira was ordered and your request for Enbrel as the Humira is not effective, does not control your symptoms.
> . . .
> The documentation in your medical file indicates the physician ordered the medication Enbrel Injection for you per your request and noted records are still pending from Kaiser regarding Enbrel.

(Id. at 29 (Ex. 17).) On September 7, 2018, plaintiff was released from custody. (Id. at 3.)

Overall, plaintiff claims that being deprived of Enbrel "destabilized" his psoriasis, causing the skin on his legs to start "burning up" and triggering a new form of psoriasis on his right leg resulting in all-day pain. (Id. at 8-9.)

### B. Procedural History

Plaintiff filed the present action in September 2019 and subsequently filed a first amended complaint in February 2020. (ECF Nos. 1, 15.) On July 29, 2020, the undersigned granted defendants' motion to dismiss, finding that the first amended complaint failed to state a claim for deliberate indifference against the same five doctors named in the current SAC. (ECF No. 48.) The court granted leave to amend, and on August 20, 2020, plaintiff filed the SAC. (ECF No. 49.) On September 8, 2020, defendants filed the instant motion to dismiss under Rule 12(b)(6), again for failure to state a claim. (ECF No. 52.)

## LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the pleading in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**DISCUSSION**

The SAC asserts a single cause of action against all six defendants: a § 1983 claim for deliberate indifference to plaintiff's medical needs, in violation of the Fourteenth Amendment. (ECF No. 49 at 3.)

    **A.    Motion to Dismiss**

In assessing the sufficiency of the SAC, the court applies the same standards described in the previous order granting dismissal with leave to amend, repeated here with some additional clarification in response to plaintiff's opposition arguments. Deliberate indifference to a serious medical need violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). In the context of pretrial detainees, as here, an inmate's rights derive from the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishments Clause. See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Under the Fourteenth Amendment, a plaintiff's claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (internal quotations omitted).

Regarding the third element of the Gordon test, the "defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each

particular case." Id. This differs from the Eighth Amendment test for deliberate indifference to the medical needs of convicted inmates which requires that the "prison official must subjectively have a sufficiently culpable state of mind." Id. at 1125 n.4 (internal quotations omitted). Pretrial detainees like plaintiff need not prove the subjective elements of the Eighth Amendment deliberate indifference test, namely actually knowing of and consciously disregarding an excessive risk to inmate health or safety. Id. Still, plaintiff must allege more than objectively negligent conduct to bring a constitutional claim. See id. at 1125 (requiring pretrial detainee plaintiffs to "prove more than negligence but less than subjective intent—something akin to reckless disregard"). But again, to satisfy this quasi-reckless mental state element, pretrial detainees need only include allegations sufficient for the court to conclude that under an objective standard, a reasonable person in the official's position would have realized the high degree of risk—not that the official in question actually realized such risk. Gordon, 888 F.3d at 1125; see Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (quoting Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) commentary on showing "reckless disregard" under objective standard).

Without a requirement to plead or prove a knowing or intentional disregard of whatever risks plaintiffs face in a given case, the Fourteenth Amendment deliberate indifference test is indeed "less stringent" than its Eighth Amendment corollary. Deloney v. Cty. of Fresno, No. 1:17-CV-01336-LJO-EPG, 2019 WL 1875588, at *5 n.11 (E.D. Cal. Apr. 26, 2019).[5] But apart from the removal of this subjective element, the two tests otherwise continue to align. Thus, plaintiff is wrong to argue that numerous foundational Eighth Amendment cases have been "overruled" in the wake of this shift. (ECF No. 56 at 5-6.)

////

---

[5] In his opposition, plaintiff requests that the court take judicial notice of Chief Judge O'Neill's opinion in Deloney, which plaintiff argues established precedent that is "binding on all judges" in this district. (ECF No. 56 at 1-2, 16.) Plaintiff's position is incorrect. Only published opinions of the Ninth Circuit Court of Appeals (and the U.S. Supreme Court) bind this court. The Deloney opinion, although well-reasoned, is not binding authority. Nevertheless, the court has considered Deloney as persuasive authority alongside other non-binding opinions of sister district courts, and need not formally judicially notice the case to do so.

As before, "[i]ndifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). And alleging that there was disagreement—either from the plaintiff, or another medical provider—as to what medications to prescribe also remains insufficient, by itself, to establish deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (same). That said, after Gordon, for a pretrial detainee to state a claim based on "choices between alternative courses of treatment," he must only allege that the chosen course of treatment "was medically unacceptable under the circumstances," Toguchi, 391 F.3d at 1058—not that the chosen treatment was also chosen "in conscious disregard of an excessive risk to the prisoner's health," id. See Flentoil v. Santa Clara Cty. Dep't of Corr., No. 18-CV-03486-EMC, 2020 WL 571025, at *9 & n.6 (N.D. Cal. Feb. 5, 2020) ("'Conscious disregard' simply is not a part of the Fourteenth Amendment's objective deliberate indifference test.").

### 1. *Drs. Drennan & Abshire*

The court previously dismissed the claims against Drs. Drennan and Abshire because the first amended complaint contained only a threadbare recital of their involvement. (ECF No. 48 at 5.) The SAC provides much more detail with respect to each, but the details now alleged only add up to a Fourteenth Amendment claim of deliberate indifference against Dr. Abshire.

Plaintiff's claims against Dr. Drennan arise almost entirely from his failure to prescribe Enbrel to plaintiff at a walk-in appointment for a separate medication on his second day in custody. (See ECF No. 49 at 3, 12.) Based on plaintiff's allegation that Dr. Drennan "avoided" setting him up with Enbrel, the SAC adequately pleads the first Gordon element of an "intentional decision" with respect to plaintiff's conditions of confinement, Gordon, 888 F.3d at 1125, even if just barely. And Dr. Drennan does not dispute the second element regarding plaintiff's risk of suffering serious harm. At the third element, however, the allegations fail.

////

As plaintiff is well aware, for this element, he must allege facts from which the court can plausibly infer that Dr. Drennan "did not take reasonable available measures to abate [the] risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." Id.  The SAC and the medical records incorporated by reference do not permit such an inference.  Applying the objective standard, a reasonable doctor in Dr. Drennan's circumstances—presented with an inmate patient whose medical release and records of existing prescriptions have only just been requested and remain pending from a pre-existing provider—would not necessarily appreciate any high degree of risk from waiting longer than one day to prescribe medication to prevent skin irritation.[6]

The same cannot be said for plaintiff's claim against Dr. Abshire, however.  By the time plaintiff was examined by Dr. Abshire on May 15, 2018, the Kaiser records request had been pending for one week, and plaintiff was presenting with symptoms that Dr. Abshire recognized as a psoriasis flare-up due to a missed dose of medication.  (ECF No. 49 at 4, 14.)  Taking plaintiff's allegations as true, his symptoms were significant enough for Dr. Abshire to suggest medical release, but she did not order any sort of change to his treatment plan.  The court liberally construes the SAC as alleging that Dr. Abshire made the "intentional decision" not to treat plaintiff's psoriasis symptoms at all, in satisfaction of the first Gordon element; and the court finds these allegations sufficiently plead that a reasonable physician in such circumstances would have appreciated the high degree of risk from not treating plaintiff's condition, satisfying the third Gordon element.  Again, defendants do not dispute the seriousness of the risk that non-treatment created for plaintiff.  As to the fourth Gordon element of causation, the court accepts as sufficient for purposes of this initial pleadings stage that Dr. Abshire's failure to prescribe any medication

---

[6] The only additional allegations against Dr. Drennan are that he "allowed" plaintiff to be transferred to RCCC without an Enbrel prescription and was somehow involved in Dr. Nugent's purported cover-up scheme.  These allegations remain far too vague and speculative to state a claim of deliberate indifference.

to control plaintiff's psoriasis caused at least the pain and flare-ups plaintiff experienced during the following two weeks before he started receiving the Humira prescription after his transfer.

Accordingly, the court denies Dr. Abshire's motion to dismiss the SAC's claim that she was deliberately indifferent to plaintiff's medical needs by failing to provide treatment for plaintiff's psoriasis.[7] The allegations related to Dr. Abshire's failure to place a "hold" to prevent plaintiff's transfer and her participation in any subsequent cover-up efforts, however, are too vague and conclusory to state a separate claim under the Fourteenth Amendment. The motion should be granted as to any claims against Dr. Abshire arising from those allegations. Likewise, all claims against Dr. Drennan should be dismissed in their entirety.

### 2. *Dr. Sahba & Mr. Carter*

Plaintiff's claim against Dr. Sahba in the FAC was also dismissed for lack of detail, with leave to amend. (ECF No. 48 at 5.) The SAC now somewhat clarifies Dr. Sahba's challenged conduct but fails to adequately plead a deliberate indifference claim against Dr. Sahba. The SAC adds pharmacist Carter as a defendant for the first time and likewise fails to state a claim against him.

The SAC's claims against Dr. Sahba and Carter fail at the first element of the Gordon test. Apparently, Dr. Sahba's only involvement with plaintiff during his incarceration was to enter a note in plaintiff's medical record on June 4, 2018, indicating some confusion over whether plaintiff had received the "biologic med" he had been prescribed. (ECF No. 49 at 26.) The court cannot glean from the pleadings any point at which Dr. Sahba made an intentional decision regarding plaintiff's conditions of confinement. See Gordon, 888 F.3d at 1125. Plaintiff's other generalized accusations that Dr. Sahba acted as a "fixer" for Dr. Nugent and joined in the "joint participation" to pressure plaintiff to post bail are utterly unsupported by any specific factual allegations. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to rise above

---

[7] In so concluding, the court takes no position on plaintiff's ultimate ability to prove this claim; it merely concludes that the allegations are sufficient to survive the motion to dismiss.

12

the speculative level."); Iqbal, 556 U.S. at 678 (complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face").

Plaintiff's allegations against defendant Carter are even more threadbare. Again, the court cannot identify within the pharmacist's June 5, 2018 prescription entry any intentional decision regarding plaintiff's conditions of confinement—regardless whether the prescription was properly authorized. There is no suggestion that Carter had any control over what medications plaintiff was or was not prescribed during his detention, or that he departed from a doctor's prescription. See Curry v. California Forensic Med. Grp., No. 2:18-CV-2513 KJN P, 2020 WL 4501799, at *9 (E.D. Cal. Aug. 5, 2020) (granting summary judgment for administrator who undisputedly "was not responsible for prescribing medication to plaintiff and did not interfere with any medication prescription," for failure to satisfy Gordon elements 1, 2, or 4). And plaintiff's sweeping allegation that Carter participated in "unlawful activities against [plaintiff's] psoriasis health interests" (ECF No. 49 at 7) does nothing to clarify how Carter was involved in the alleged deprivation. The claims against both Dr. Sahba and Mr. Carter are thus subject to dismissal.

### 3. Dr. Padilla

The court previously dismissed the FAC against Dr. Padilla for failure to allege any intentional decision regarding plaintiff's medical treatment, or any objectively unreasonable conduct. (ECF No. 48 at 5.) In the SAC plaintiff largely repeats the same allegations asserted against Dr. Padilla in the FAC, continuing to portray Dr. Padilla as someone sympathetic to plaintiff's medical complaints who tried to provide plaintiff with the medication he sought. The only substantive additions are plaintiff's allegation that Dr. Padilla expected plaintiff to fail with his grievance pursuit and would not challenge Dr. Nugent's prescription decision. (ECF No. 49 at 5.) These flimsy and speculative assertions are not enough to state a cognizable claim. Because plaintiff's renewed claim against Dr. Padilla is substantially similar to the one dismissed in the FAC, the SAC's claim against Dr. Padilla should also be dismissed.

### 4. Dr. Nugent

The court previously dismissed the FAC against Medical Director Dr. Nugent (with leave

1  to amend) because the FAC pleaded only a disagreement with Dr. Nugent's medical decision to
2  prescribe Humira instead of Enbrel.  (ECF No. 48 at 6.)  With the aid of further surrounding
3  allegations in the SAC, the court now better understands plaintiff's claim against Dr. Nugent, but
4  the SAC still does not adequately plead that Dr. Nugent was deliberately indifferent in prescribing
5  Humira instead of Enbrel.

6  With plaintiff's added allegations regarding the standard packaging and dosing of Enbrel,
7  it appears that Dr. Nugent misinterpreted plaintiff's medical file when arriving at his decision to
8  prescribe Humira instead of Enbrel.  Taking plaintiff's allegations as true, Dr. Nugent seems to
9  have read the May 24, 2018 nurse's entry stating that plaintiff had a "current RX Enbrel
10 50 mg/ml Pen 3.92mls sub Q, weekly" (ECF No. 49 at 15) and assumed that plaintiff had told the
11 nurse he was taking the entire 3.92 milliliters every week.  A review of the April 2018 Kaiser
12 prescription and Enbrel specifications plaintiff says he provided the medical staff, or of the
13 publicly available packaging information that Enbrel comes in packs of four syringes each of
14 which contains a 0.98 mL dose of Enbrel, would have explained the 3.92 milliliters volume (4 x
15 0.98) that Dr. Nugent seemingly found implausible when deciding what prescription to order.

16 But alleging that Dr. Nugent <u>neglected</u> to consider that information is not enough to state
17 a claim of deliberate indifference under the Fourteenth Amendment.  <u>Gordon</u>, 888 F.3d at 1125
18 (requiring plaintiffs to "prove more than negligence").  Plaintiff must still allege facts
19 demonstrating that an official in Dr. Nugent's circumstances "would have appreciated the high
20 degree of risk involved" in deciding to prescribe Humira instead of Enbrel.  <u>Gordon</u>, 888 F.3d
21 at 1125.  The SAC contains no allegation from which the court can plausibly infer that a doctor in
22 Dr. Nugent's position could know that non-Enbrel medications had failed to control plaintiff's
23 psoriasis in the past.  Plaintiff emphasizes that Dr. Nugent never personally examined or
24 consulted with him, and none of the medical records attached to the SAC would suggest to a
25 reasonable reviewer that Humira was known to be ineffective for plaintiff.  So it is difficult to see
26 how a doctor in Dr. Nugent's reviewing capacity could have appreciated a significant risk in
27 prescribing Humira as an alternative psoriasis medication.  Plaintiff tries to frame the July 2020
28 doctor notes and grievance reply as admissions that medical staff were aware that Humira would

1  be ineffective. (ECF No. 49 at 8.) But the records themselves make clear that their authors were
2  simply describing plaintiff's own contemporaneous assessment of the situation.

3        Simply put, the SAC does not include facts from which the court can infer that it was
4  "medically unacceptable under the circumstances" to have prescribed Humira instead of Enbrel,
5  see Toguchi, 391 F.3d at 1058, even assuming that Dr. Nugent's stated reason for doing so was
6  faulty. Plaintiff attempts to bridge this gap by alleging that Dr. Nugent prescribed Humira to him,
7  at age 77, despite Humira generally carrying greater risks for patients over 65 years old. (ECF
8  No. 49 at 7.) That allegation alone, while perhaps a basis for a negligence or malpractice claim,
9  is not enough to demonstrate that Dr. Nugent's choice to prescribe Humira was objectively
10 unreasonable.

11        It remains the case both pre- and post- Gordon that deciding to prescribe a different
12 medication than another doctor—or to prescribe a medication other than plaintiff's preferred
13 medication—alone, does not support a § 1983 claim. Carlson v. Ada Cty. Jail Med., No. 1:20-
14 CV-00431-BLW, 2020 WL 6487191, at *3 (D. Idaho Nov. 4, 2020). And the fact that a patient
15 has received a certain prescription before going to jail does not mean that a jail doctor necessarily
16 must make that same prescription available to plaintiff while in custody. See Flentoil, 2020 WL
17 571025, at *9. The SAC lacks sufficient allegations to demonstrate that it would have been
18 "obvious" to a reasonable doctor in Dr. Nugent's position that there was a high degree of risk that
19 plaintiff's psoriasis would flare up unabated if the Enbrel prescription was not restarted. Gordon,
20 888 F.3d at 1125. And plaintiff's insistence that Dr. Nugent fabricated and backdated the
21 May 27, 2018 entry brings him no closer to stating a claim that satisfies the Gordon test.
22 Accordingly, the claim against Dr. Nugent should be dismissed.

23       **B.     Leave to Amend**

24       If the court finds that a complaint or claim should be dismissed for failure to state a claim,
25 the court has discretion to dismiss with or without leave to amend. Leave to amend should be
26 granted if it appears possible that the defects in the complaint could be corrected, especially if a
27 plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v.
28 United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to

amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987))).  However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the court may dismiss without leave to amend.  Cato, 70 F.3d at 1105-06.

Plaintiff was advised of the deficiencies in his claims against Drs. Drennan, Sahba, Padilla, and Nugent in the court's prior order dismissing the first amended complaint and was provided an opportunity to amend.  (ECF No. 48.)  The allegations added to plaintiff's claims against these doctors still fail to state a claim for relief, for the reasons discussed above.  And the allegations against Dr. Padilla are substantially similar to those the court previously dismissed as insufficient.  Although this is the first time plaintiff has named pharmacist Carter as a defendant, the failure to include him as a defendant in the first two complaints, combined with the minimal allegations present in the instant SAC, convince the court that plaintiff is unable to allege in good faith that Mr. Carter had any control over the complained-of medical treatment.  The court therefore concludes that further leave to amend as to each of these defendants would be futile.  Accordingly, the court recommends dismissing the claims against them with prejudice.  See Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 52) be DENIED IN PART and GRANTED IN PART as follows:

1. The motion to dismiss be DENIED as to plaintiff's Fourteenth Amendment claim against Dr. Janet Abshire arising from her alleged failure to treat plaintiff's psoriasis symptoms; and

2. The motion to dismiss be GRANTED as to all other claims and defendants, which should be dismissed from the action with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: December 29, 2020

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.ervi.1883